1  BAO M. VU (SB #277970)
   bao.vu@stoel.com
2  THOMAS A. WOODS (SB #210050)
   thomas.woods@stoel.com
3  ANDREW H. MORTON (*admitted pro hac vice*)
   andrew.morton@stoel.com
4  STOEL RIVES LLP
   500 Capitol Mall, Suite 1600
5  Sacramento, CA 95814
   Telephone: 916.447.0700
6  Facsimile: 916.447.4781

7  *Proposed Counsel for Debtor and
   Debtor in Possession*

8

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 12  In re: | Case No. 20-30383 |
| 13  CROSSCODE, INC., | Chapter 11 |
| 14           Debtor. | MOTION TO APPROVE COMPROMISE PURSUANT TO FED. R. BANKR. P. 9019 |
| 15 | **Objection Deadline:** July 29, 2020 at |
| 16 | 12:00 p.m. (noon) (PT) |
| 17 | Date:    July 30, 2020 (if objection is filed) Time:    9:30 a.m. (PT) |
| 18 | Place:   450 Golden Gate Avenue Courtroom 17 |
| 19 | San Francisco, CA 94102 Judge:   Hon. Dennis Montali |
| 20 | |

21          Crosscode, Inc., as debtor and debtor-in-possession (the "***Debtor***") in the above-captioned

22  chapter 11 case (the "***Chapter 11 Case***") hereby submits this motion ("***Motion***") pursuant to

23  Sections 363(b) and 105(a) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule

24  9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") for an order

25  approving the settlement agreement, entered into as of July 20, 2020, by and among the Debtor,

26  Mr. Aditya Sharma ("***Mr. Sharma***"), and Dr. Anshu Sharma ("***Dr. Sharma***" and together with Mr.

27  Sharma, the "***Sharmas***"), substantially in the form annexed to this Motion as **<u>Exhibit A</u>** (the

28  "***Settlement Agreement***").

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 1 of 28

In support of the Motion, the Debtor submits the declaration of its counsel, Andrew Morton (the "**Morton Declaration**"), filed contemporaneously herewith and which it hereby incorporates by reference. A proposed form of order is attached as **Exhibit B** (the "**Proposed Order**").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     PRELIMINARY STATEMENT

By this Motion, the Debtor seeks authority for the Debtor and the Sharmas to enter into the Settlement Agreement, which provides a global resolution for all of the settling parties' disputed claims. To date, the Debtor's efforts at reorganization have been complicated and placed at risk by the time and expense required to address numerous disputes involving the Sharmas. The Settlement Agreement is fair, equitable, and will maximize the value of the Debtor's bankruptcy estate and the funds available to pay its unsecured creditors. The global resolution of all outstanding disputes with the Sharmas under the Settlement Agreement will allow the Debtor to focus on soliciting acceptance of its Chapter 11 plan of reorganization (the "**Plan**"), preserving its financial resources for the benefit of its creditors and other stakeholders, and effecting a speedy reorganization in the coming weeks.

### II.     JURISDICTION

The United States Bankruptcy Court for the Northern District of California (this "**Court**") has jurisdiction over this Chapter 11 Case, the Debtor, property of the Debtor's estate, and this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Local Bankruptcy Rules for the Northern District of California (the "**Bankruptcy Local Rules**"). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.     BACKGROUND

On May 5, 2020 (the "**Petition Date**"), the Debtor commenced with the Court a voluntary case under chapter 11, subchapter V of the Bankruptcy Code. The Debtor continues to be in possession of its assets and operate its business and manages its properties as a debtor in possession pursuant to Sections 1107(a), 1108, and 1184 of title 11 of the United States Code (the "**Bankruptcy Code**"). On May 7, 2020, the Office of the United States Trustee for Region 17 appointed

Case: 20-30383     Doc# 101     Filed: 07/20/20     Entered: 07/20/20 19:46:28     Page 2 of 28

Christopher Hayes as Subchapter V Trustee (the "**Subchapter V Trustee**") in the Chapter 11 Case pursuant to Section 1183 of the Bankruptcy Code.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Case and information regarding the Debtor's business and capital structure is set forth in the *Declaration of Greg Wunderle in Support of Chapter 11 Petition and First-Day Motions* (Dkt. No. 7) (the "**First Day Declaration**").

## IV. THE SETTLING PARTIES' DISPUTED CLAIMS

### A. Background

Mr. Sharma founded the Debtor in 2015 and served as its CEO and Chairman of its Board of Directors until November 13, 2019. In May 2019, when Mr. Sharma was still the CEO, the Debtor closed a Series A Preferred Stock offering, raising $9.25 million in gross proceeds. After the closing of the offering, the relationship between the Debtor and Mr. Sharma changed. In November 2019, Mr. Sharma was removed as CEO and Chairman of the Debtor's Board of Directors. Since then, the Debtor and the Sharmas (collectively, the "**Settling Parties**") have asserted various claims, engaged in protracted litigation, and fundamentally disagreed about the factual and legal basis and causes of their disputes relating to, among other things, the Series A Preferred Stock offering, Mr. Sharma's removal as CEO and Chairman, the Debtor's intellectual property, the Debtor's indebtedness to the Sharmas, and the Parties' respective contractual and other asserted or potential claims and counterclaims in connection therewith. *See* Morton Declaration, ¶ 3. Additional detail about these disputes is available in the various litigation and bankruptcy pleadings further described below, including the First Day Declaration. *See* First Day Declaration, ¶¶ 19–44.

### B. Crosscode's Claims

After Mr. Sharma separated from the Debtor, he asserted ownership of the Debtor's intellectual property pursuant to a purported license agreement between himself and the Debtor (the "**Purported License Agreement**"), which claim to ownership is disputed by the Debtor. On January 3, 2020, the Debtor filed litigation against Mr. Sharma in the United States District Court of the Northern District of California seeking declaratory judgment that the Purported License Agreement

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO APPROVE COMPROMISE                    -3-

107242069.4 0072141-00003

Case: 20-30383    Doc# 101    Filed: 07/20/20    Entered: 07/20/20 19:46:28    Page 3 of 28

is null and void (Case No. 3:20-cv-00104-VC) (the "*California Action*"). In the California Action, the Debtor also seeks damages related to Mr. Sharma's attempts to enforce the Purported License Agreement, defamation, trade secret theft, breach of Mr. Sharma's employment agreement, and intentional interference with the Debtor's business and investor relations. *See* Debtor's Amended Complaint (California Action Dkt. No. 48); Mr. Sharma's Answer (California Action Dkt. No. 64). Mr. Sharma denies liability for the claims and damages asserted in the California Action, and has also asserted counterclaims as set forth below. The Debtor's claims in the California Action remain pending but would be fully resolved and settled by the Settlement Agreement.

## C.     The Sharmas' Claims

The Sharmas have asserted numerous claims against the Debtor. In the California Action, Mr. Sharma filed counterclaims against the Debtor for declaratory relief regarding his removal from the Debtor's Board of Directors and seeking to recover monies lent pursuant to an alleged oral contract with the Debtor from 2016. *See* Mr. Sharma's Counterclaim (California Action Dkt. No. 64); Debtor's Answer (California Action Dkt. No. 71).  Mr. Sharma also filed a corresponding proof of claim in the Chapter 11 Case in the amount of $175,000, plus additional unliquidated amounts (Claim No. 11, "*Mr. Sharma's Claims*"). The Debtor denies all liability for Mr. Sharma's counterclaims in the California Action and disputes all of Mr. Sharma's Claims as to both liability and amount. Mr. Sharma's Claims and his counterclaims in the California Action remain pending, but would be fully resolved and settled by the Settlement Agreement.

Separately, on February 3, 2020, the Sharmas initiated a joint action against the Debtor and certain members of its Board of Directors in the United States District Court for the District of Minnesota (Case No. 20-cv-00436 PJS/TNL), seeking injunctive relief related to the License Agreement and raising claims of alleged harassment (the "*First Minnesota Action*"). *See* Sharmas' Complaint (First Minnesota Action Dkt. No. 1). The claims in the First Minnesota Action were dismissed without prejudice on March 13, 2020. *See* Notice of Voluntary Dismissal (First Minnesota Action Dkt. No. 30). Though these claims are not currently pending, they were dismissed without prejudice and the Sharmas would be free to re-raise them in the absence of the

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO APPROVE COMPROMISE            -4-

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 4 of
28
107242069.4 0072141-00003

Settlement Agreement. The Settlement Agreement finally resolves and settles the disputes and issues raised in the First Minnesota Action.

On April 22, 2020, Dr. Sharma filed an action in Minnesota state court alleging that the Debtor defaulted on several loans she made to the Debtor. The Debtor removed the case to the U.S. District Court for the District of Minnesota on April 29, 2020 (Case No. 0:20-cv-01042-DSD-BRT) (the "***Second Minnesota Action***"). Dr. Sharma also filed a corresponding proof of claim in the Chapter 11 Case in the principal amount of $706,104, plus interest (Claim No. 10-2, "***Dr. Sharma's Claims***"). The Debtor denies all liability for Dr. Sharma's claims in the Second Minnesota Action and disputes Dr. Sharma's Claims as to both liability and amount. Dr. Sharma's Claims and her claims in the Second Minnesota Action remain pending, but would be fully resolved and settled by the Settlement Agreement.

In addition to the Settling Parties' past and ongoing litigation in federal district courts, other latent disputes or unasserted claims might give rise to further litigation in the future. For example, the Settlement Agreement also resolves a dispute between the Debtor and Mr. Sharma with respect to ownership of certain shares of the Debtor's Preferred Series A Stock and forecloses, whereas the Plan otherwise would not, the possibility of such shares becoming a source of dispute or litigation after the Debtor's emergence from the Chapter 11 Case under the Plan. All such potential claims among the Settling Parties related to the Series A Preferred Stock offering are fully resolved and settled by the Settlement Agreement.

Furthermore, there are also a number of disputes among the Settling Parties presently pending before the Bankruptcy Court. These include active and potential disputes regarding (i) Mr. Sharma's Claims and Dr. Sharma's Claims, as embodied by their respective proofs of claim, filed in the Chapter 11 Case; (ii) the Sharmas' objections to the Debtor's postpetition financing (*see Amended Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, 364(c), 364(d), and 507; (II) Authorizing the Use of Cash Collateral; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief*, Bankr. Dkt. Nos. 33, 58); (iii) the Debtor's application to retain bankruptcy counsel (*see Application of Debtor Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to*

Stoel Rives LLP
Attorneys At Law
Sacramento

MOTION TO APPROVE COMPROMISE     -5-

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 5 of 28
107242069.4 0072141-00003

1 | *Retain and Employ Stoel Rives LLP as Attorneys for the Debtor Effective as of the Petition Date*,

2 | Bankr. Dkt. Nos. 48, 59); (iv) the Debtor's application to retain special counsel (*see Application of*

3 | *Debtor Pursuant to 11 U.S.C. § 327(e), Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain*

4 | *and Employ Ogloza Fortney + Friedman LLP as Counsel for the Debtors Effective May 6, 2020*,

5 | Bankr. Dkt. Nos. 50, 60); and (v) confirmation of the Debtor's Plan. All of the above disputes

6 | pending in the Bankruptcy Court will be fully resolved and settled under the terms of the Settlement

7 | Agreement, setting the stage for the Debtor to move forward and confirm its Plan in the Chapter 11

8 | Case.

## V.    THE MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement achieves a global resolution in full settlement of all actual and potential claims and disputes, in and outside of the Chapter 11 Case, among the Settling Parties and is attached hereto as **Exhibit B**. It was reached following a comprehensive mediation process that was chaired by the former Chief Judge of this Court, Randall Newsome, and lasted over fourteen hours. After the mediation, the Settling Parties then engaged in extensive negotiations and drafting over a period of two weeks before setting on the material terms and agreed language of the Settlement Agreement. The following description provides a summary of the Settlement Agreement's key material terms intended to help the Bankruptcy Court and parties in interest to understand the Settlement Agreement. The summary is not intended as an exhaustive account of all of the terms included therein. In the event of any conflict between the terms of the Settlement Agreement any description of the Settlement Agreement contained in this Motion, the terms of the Settlement Agreement shall control. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

### A.    Consideration

The Settling Parties have provided consideration to one another under the terms of the Settlement Agreement. First, the Settling Parties agreed that Dr. Sharma's Claims (Claim No. 10-2) will be allowed as general unsecured claims in the agreed amount of $250,000 (the "***Cash Consideration***"). *See* Settlement Agreement, § 1(a). Subject to the approval of the Bankruptcy Court, the Debtor shall pay $50,000 of the Cash Consideration within fifteen (15) days after the

entry of a final order approving this Motion. *See id.*, § 9(a). The remaining $200,000 of the Cash Consideration (or the full amount of $250,000, if the Court declines to authorize payment following approval of this Motion) shall be treated and paid as an Allowed Class Three General Unsecured Claim under the Debtor's Plan. *See id.* The Settling Parties anticipate that Allowed Class Three General Unsecured Claims will be paid in full under the terms of the Debtor's Plan. *See id.*, § 1(a).

Second, the Settling Parties agreed that the Debtor's records reflect that Mr. Sharma owns 150,000 shares of outstanding Series A Preferred Stock, which shall be transferred to the Debtor on the Effective Date of the Plan. *See id.*, § 1(b). Neither of the Sharmas will receive any consideration for such Series A Preferred Stock except as provided under the Settlement Agreement. *See id.* The Sharmas waive all rights, claims, and interests in Mr. Sharma's Series A Preferred Stock. *See id.*

Third, the Settling Parties agreed that Mr. Sharma shall keep his common stock in the Debtor with the understanding that his common stock shall receive identical treatment as other common stock, in or outside of bankruptcy procedures and disposition, including under the Plan. *See id.*, § 1(c).

Fourth, Mr. Sharma agreed to release and surrender all of his claims, rights, or interests, if any, in or to the Debtor's intellectual property (the "***Company's IP***"), including under the Purported License Agreement and that are the subject of the California Action. *See id.*, § 8.

### B. Releases

The Settling Parties provided one another with comprehensive mutual releases with respect to all claims and interests between and among them. *See id.*, § 2. The Sharmas agreed to release the Debtor and its current and former directors, officers, and various other parties, *i.e.* the Company Parties, from all claims of any kind arising out of any matter that occurred on or prior to the Bankruptcy Approval Motion Final Order Date. *See id.*, § 2(a). Mr. Sharma separately and additionally agreed to release all of his claims of any kind against the Company Parties arising out of any matter that occurred on or prior to the Bankruptcy Approval Motion Final Order Date. *See id.*, § 2(b). Likewise, the Debtor agreed to provide comprehensive releases of all of its claims against the Sharmas and related parties, *i.e.*, the Sharma Releasors, from all claims of any kind

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 7 of
28
107242069.4 0072141-00003

arising on or prior to or on the Bankruptcy Approval Motion Final Order Date. *See id.*, § 2(c). Since the effectuation of the mutual releases described above will resolve the disputes in the California Action and the Second Minnesota Action, the Settling Parties also agreed to apply for and effectuate the dismissal of each action within fifteen (15) days of the Bankruptcy Approval Motion Final Order Date. *See id.*, § 9(b).

In addition, the Debtor agreed to seek consensual third-party releases for its current and former officers and directors in connection with the solicitation and confirmation of the Plan and to include Mr. Sharma within the scope of any such release provision set forth in its Plan that applies to the Debtor's present and former officers or directors. *See id.*, § 3(f).

### C.     Withdrawal of Objections and Bankruptcy Cooperation

As described in Section IV(C) above, the Settling Parties are adverse to one another with respect to certain pending motions and applications in the Chapter 11 Case. Under the Settlement Agreement, the Sharmas have agreed to cooperate with the Debtor, withdraw all of their objections, and support the Debtor's Plan. *See id.*, § 3. Specifically, upon the filing of this Motion and subject to limited exceptions provided for in the Settlement Agreement, the Sharmas agreed, among other things, to (i) withdraw all of their pending objections in the Chapter 11 Case, (ii) not file any additional objections to the retention of Debtor's bankruptcy counsel, special litigation counsel, or any other counsel it may seek to employ, (iii) not object to any fee applications of the Debtor's counsel, (iv) support and vote any claims or interests they may have in favor of the Plan and not object or otherwise oppose the Plan, (v) not oppose or otherwise object to any other motion or application filed by the Debtor, and (vi) not take or cause any action or engage in any conduct that would in any way adversely affect the Debtor's consummation or implementation of the Plan. *See id.*

### D.     Non-Disparagement, No Contact, and No Harassment

Lastly, the Settling Parties agreed to (i) a mutual non-disparagement clause designed to avoid future damages and disputes arising as the result of disparaging remarks, as defined in the Settlement Agreement, and along similar lines, (ii) no contact and no harassment provisions under which the Settling Parties agree to refrain from all future contact apart from the contact necessary

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO APPROVE COMPROMISE                    -8-

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 8 of
28
107242069.4 0072141-00003

to effectuate the terms of the Settlement Agreement. *See id.*, §§ 4, 5. Breach of the mutual non-disparagement, no-contact, and no-harassment provisions shall entitle the non-breaching party to $100,000 in liquidated damages per breach. *See id.*, § 7.

## VI. BASIS FOR THE RELIEF REQUESTED

### A. The Settlement Agreement is in the Best Interests of the Debtor's Estate and Should Be Approved Pursuant to Bankruptcy Rule 9019.

#### 1. Bankruptcy Rule 9019 and the *A&C Properties* Factors

The Debtor submits that the Settlement Agreement is in the best interests of the Debtor's estate and all stakeholders and should be approved under Bankruptcy Rule 9019. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements that are fair, equitable, reasonable under the circumstances of the case, and in the best interests of the estate. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). The decision to approve a particular compromise is in the sound discretion of the bankruptcy court. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

The purpose of settlement is to allow the trustee and creditors to "avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A&C Props.)*, 784 F.3d 1377, 1380–81 (9th Cir. 1986) (citing *Matter of Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982)). The law favors compromise over litigation for its own sake, and as long as the bankruptcy court considers the various factors determining the reasonableness of a compromise, its decision will not be disturbed. *A&C Props.*, 784 F.3d at 1381.

To determine whether a settlement should be approved, Courts in this jurisdiction typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views. *Id.*; *see also In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr.

Stoel Rives LLP
Attorneys At Law
Sacramento

MOTION TO APPROVE COMPROMISE                    -9-

Case: 20-30383    Doc# 101    Filed: 07/20/20    Entered: 07/20/20 19:46:28    Page 9 of 28
107242069.4 0072141-00003

N.D. Cal. 2004) (applying the *A&C Properties* factors to decide a Bankruptcy Rule 9019 motion). The Court need not conduct a mini-trial to decide a settlement motion, but instead must "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Pacific Gas & Elec. Co.*, 304 B.R. at 417 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496–97 (Bankr. S.D.N.Y. 1991). Here, the *A&C Properties* factors support approval of the Settlement Agreement.

### 2. Probability of Success in Litigation

The Debtor believes it is likely to prevail on many of its claims and defenses against Mr. Sharma in the California Action and, correspondingly, Mr. Sharma's Claims in the Chapter 11 Case. The Debtor also believes it is likely to succeed in defending many or all of Dr. Sharma's claims in the Second Minnesota Action and, correspondingly, Dr. Sharma's Claims in the Chapter 11 Case. *See* Morton Declaration, ¶ 6. Nonetheless, the Debtor is concerned that fully litigating and adjudicating all of the actions would require a lengthy series of protracted legal battles in multiple fora, with no guarantee of a favorable outcome and substantial uncertainty regarding its ability to recover prevailing party attorneys' fees. *See id.* As discussed below, the claims and disputes between the Debtors and the Sharmas are multitudinous, factually and legally complex, and the delay and uncertainty associated with their resolution could materially impede or disrupt confirmation or consummation of the Debtor's Plan. *See id.* Accordingly, despite having confidence in its legal position in each of its particular disputes with the Sharmas, the relevance of this factor to the Debtor is subsumed by the sheer expense and financial risk the Debtor would be required to undertake to "succeed" in the disputed matters. *See id.* A successful outcome for the Debtor, and the outcome most beneficial to its bankruptcy estate, its creditors, and all stakeholders, is one that brings its disputes with the Sharmas to a swift and certain end. The global resolution provided for by the Settlement Agreement does exactly that.

### 3. Difficulties of Collection

The Debtor is not aware of any special difficulties with respect to collection of any debt a court might order the Sharmas to pay to its bankruptcy estate as a result of the resolution of one or more of the various matters disputed by the Settling Parties. Even so, collections among parties

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO APPROVE COMPROMISE                    -10-

Case: 20-30383    Doc# 101    Filed: 07/20/20    Entered: 07/20/20 19:46:28    Page 10 of 28

107242069.4 0072141-00003

with a history of legal disputes can be inherently challenging and there is always a possibility of delays, additional costs, and uncertainty. The Settlement Agreement clearly sets forth the obligations of each of the Settling Parties, reducing uncertainty and the likelihood of subsequent disputes related to collection. This factor supports approval of the Settlement Agreement.

### 4. Complexity and Expense of Litigation

The primary reason the Settlement Agreement should be approved is because of the complexity and expense of the ongoing litigation with the Sharmas. *See id.*, ¶ 7. The Debtor is a startup software company that relies on capital investments and financing as it develops its products for market, and it cannot continue to bear the costs of litigation with the Sharmas. Even if the Debtor were to eventually prevail in all of its disputes with the Sharmas, the difficulty and expense of the litigation required to achieve such an outcome is unsustainable and, if continued, would certainly diminish the value of the debtor's bankruptcy estate and potentially risk the Debtor's ability to pay its unsecured creditors in whole or even in part. *See id.*, ¶ 7.

The Settlement Agreement provides a complete, global resolution of all the disputes among the Settling Parties. It brings a swift and decisive end to the various actual and potential disputes in federal and bankruptcy court, maximizes the value of the Debtor's bankruptcy estate, and drastically increases the likelihood that the unsecured creditors of the Debtor's bankruptcy estate (including Dr. Sharma herself, if the Settlement Agreement is approved) will be paid in full. *See id.*, ¶ 9. In addition to benefitting the Debtor's estate and its creditors, the Settlement Agreement will, crucially, allow the Debtor to focus its time and resources on soliciting support for confirmation of its Plan, moving forward with its reorganization, raising the funds necessary to consummate its confirmed Plan, and continuing to develop high-value software products for market after exiting bankruptcy. *See id.*

### 5. Paramount Interests of the Creditors

The cost of litigation with the Sharmas has been and continues to be detrimental to the Debtor's bankruptcy estate. To the extent the Debtor must expend its resources on the fees and expenses related to such litigation, the creditors of the Debtor's bankruptcy estate face the possibility that their recovery will be diminished. The Settlement Agreement will reduce the

Stoel Rives LLP
Attorneys At Law
Sacramento

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 11 of 28
107242069.4 0072141-00003

Debtor's litigation expenses and protect the paramount interest of the creditors in maximizing their recovery from the Debtor's bankruptcy estate. The Debtor does not anticipate that paying Dr. Sharma the Cash Consideration of $250,000, some or all of which will be paid as an Allowed Class 3 General Unsecured Claim, will diminish the recovery of other general unsecured creditors. *See id.*, ¶ 8. The Settlement Agreement ensures the drastic reduction of the Debtor's litigation expenses and is in the best interest of the creditors of the Debtor's bankruptcy estate.

### 6. The Settlement Agreement Should be Approved

The law favors compromise over litigation for its own sake. The Settlement Agreement is a fair and equitable compromise that resolves the disputes of the Debtor and the Sharmas and protects the interests of the creditors of the bankruptcy estate by reducing its litigation expenses. The *A&C Properties* factors support approval of the Settlement Agreement.

### B. Entry into the Settlement Agreement is a Sound Exercise of the Debtor's Business Judgment and Should Be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code.

The Court may also authorize the Debtor to enter into the Settlement Agreement pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code because entry into the Settlement Agreement falls well with the Debtor's sound business judgment.

Section 363(b) of the Bankruptcy Code provides that the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Together, these sections of the Bankruptcy Code provide the Court with the authority to grant the relief requested herein. *See, e.g.*, *In re Walter*, 83 B.R. 14, 17 (B.A.P 9th Cir. 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification."). Once a debtor articulates a valid business justification under Section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. *In re Advanced Contracting Solutions*, 582 B.R. 285, 310 (Bankr. S.D.N.Y. 2018).

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 12 of 28
107242069.4 0072141-00003

1   Here, the Debtor seeks authorization to enter into the Settlement Agreement, which in turn

2   requires it to use property of the estate other than in the ordinary course of business by (i) settling

3   its claims with the Sharmas, and (ii) providing for a payment of $50,000 to Dr. Sharma during the

4   Chapter 11 Case. The Debtor has reviewed and analyzed the carefully negotiated Settlement

5   Agreement in good faith and determined that entry into the Settlement Agreement is in the best

6   interests of its bankruptcy estate and its creditors. The Debtor is entitled to the presumption that it

7   validly exercised valid business judgment and submits that, based on the foregoing, the Motion

8   authorizing the Debtor to enter into the Settlement Agreement should be approved.

9   **VII.   NOTICE**

10   Notice of this Motion will be provided to: (i) the Office of the United States Trustee for

11   Region 17; (ii) Christopher Hayes, Subchapter V Trustee, (iii) the DIP Lender Representative and

12   counsel for the DIP Lender Representative; (iv) the Bridge Noteholders, (v) Peter Jazayeri, counsel

13   for the Sharmas, (vi) Aditya Sharma, (vii) Anshu Sharma, and (viii) any other party-in-interest

14   entitled to notice of this Motion. The Debtor respectfully submits that no further notice is required.

15   No previous request for the relief sought herein had been made by the Debtor to this or any

16   other court.

17   WHEREFORE the Debtor respectfully requests entry of an order granting (i) the relief

18   requested herein by approving the Settlement Agreement pursuant to Bankruptcy Rule 9019, and

19   (ii) such other and further relief as the Court may deem just and appropriate.

20   DATED:  July 20, 2020.

21   STOEL RIVES LLP

22

23   By: /s/ Andrew H. Morton
       Bao M. Vu
       Thomas A. Woods

24   Andrew H. Morton (*admitted pro hac vice*)

25   *Proposed Counsel for Debtor and
       Debtor in Possession*

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO APPROVE COMPROMISE          -13-

Case: 20-30383   Doc# 101   Filed: 07/20/20   Entered: 07/20/20 19:46:28   Page 13 of
28
107242069.4 0072141-00003

# Exhibit A

## CROSSCODE-SHARMA SETTLEMENT AGREEMENT

This Settlement Agreement ("***Settlement Agreement***") is made as of July 20, 2020, by and between Crosscode, Inc., a Delaware corporation ("***Crosscode***" or the "***Company***" or the "***Debtor***") and Mr. Aditya R. Sharma ("***Mr. Sharma***") and Dr. Anshu Sharma ("***Dr. Sharma***") (Mr. Sharma and Dr. Sharma, the "***Sharmas***") (all, collectively, the "***Parties***").

WHEREAS, on November 13, 2019, Mr. Sharma was removed from the Company's board of directors and his employment as the Company's Chief Executive and President was terminated;

WHEREAS, on January 3, 2020, the Company initiated litigation against Mr. Sharma in the U.S. District Court for the Northern District of California, captioned *Crosscode, Inc. v. Aditya Sharma*, Case No. 3:20-CV-00104-VC (the "***California Action***"*)*, seeking: (i) a declaratory judgment that a certain purported license agreement dated August 16, 2017 purportedly between Mr. Sharma and the Company (the "***Purported License Agreement***") was invalid and (ii) monetary damages for a variety of torts related to alleged conduct by Mr. Sharma after his employment with the Company ceased;

WHEREAS, on April 6, 2020, Mr. Sharma asserted counterclaims against the Company in the California Action seeking: (i) a declaratory judgment and related relief that his removal from the Company's Board was improper; and (ii) to recover monies Mr. Sharma purportedly lent the Company;

WHEREAS, on April 9, 2020, Dr. Sharma served a lawsuit against the Company that was removed to the U.S. District Court for the District of Minnesota, captioned *Anshu Sharma v. Crosscode, Inc.*, Case No. 0:20-cv-1042-DSD/BRT (the "***Minnesota Action***"), seeking to recover unpaid principal and interest on several loans she allegedly made to the Company;

WHEREAS, on May 5, 2020, the Company filed a petition for Chapter 11 protection in the U.S. Bankruptcy Court for the Northern District of California (the "***Bankruptcy Court***"), captioned *In re Crosscode, Inc.*, Case No. 20-30383 (the "***Bankruptcy Case***");

WHEREAS, on July 13, 2020, Mr. Sharma filed a Proof of Claim in the Bankruptcy Case asserting claims for more than $175,000 (Claim No. 11, "***Mr. Sharma's Bankruptcy Claims***"), all of which is disputed by the Debtor;

WHEREAS, on July 13, 2020, Dr. Sharma filed a Proof of Claim in the Bankruptcy Case asserting claims for more than $706,140 (Claim No. 10-2, "***Dr. Sharma's Bankruptcy Claims***"), all of which is disputed by the Debtor; and

WHEREAS, the Company's records identify Mr. Sharma as the holder of 2,421,402 shares of the Company's common stock and 150,000 shares of the Company's Series A Preferred Stock;

WHEREAS, on June 29, 2020, the Company and the Sharmas participated in a mediation before Hon. Randall Newsome (Ret.) with respect to their various disputes and claims, including as set forth above;

WHEREAS, on July 15, 2020, the Parties entered into a binding settlement term sheet (the "***Term Sheet***") to resolve all of the Parties' claims; and

THEREFORE, in consideration of the terms, conditions, and promises herein, the Parties agree as follows:

1. **Consideration.** In exchange for the promises, commitments, and consideration undertaken herein, for the releases set out herein, and in full settlement of all actual and potential claims between the Parties, the Parties agree to the following consideration:

a. Dr. Sharma's Claims (Claim No. 10-2) will be allowed as general unsecured claims in the agreed amount of $250,000 (the "***Cash Consideration***"), and will be treated as Class Three: General Unsecured Claims under the Debtor's to-be-filed Chapter 11 (Subchapter V) Plan of Reorganization (the "***Plan***") in the Bankruptcy Case. Under the terms of the Plan, Dr. Sharma shall receive payment of the full Cash Consideration.

b. The Sharmas agree that the Debtor's records reflect that 150,000 shares of its outstanding Series A Preferred Stock are owned by Mr. Sharma (the "***Sharmas Series A Preferred Stock***"). Notwithstanding any terms to the contrary in the Plan, the Parties agree that on the effective date of the Plan (as defined in the Plan, the "***Effective Date***"): (i) the Sharmas Series A Preferred Stock shall not be converted or receive any consideration in exchange therefor except as otherwise governed by this Settlement Agreement; (ii) all shares of the Sharmas Series A Preferred Stock shall be transferred to the Company; (iii) the Sharmas will waive all rights, claims, interest in the Sharmas Series A Preferred Stock; and (iv) all such rights, claims, and interests therein shall be discharged.

c. Mr. Sharma shall keep his common stock in Crosscode however, his common stock shall receive the same identical treatment as all other common stock holders as identified in the Company's current list of common stockholders, in or outside of bankruptcy procedures and disposition, including under the Plan.

d. Except and only to the extent expressly set forth above, Mr. Sharma's Bankruptcy Claims (Claim No. 11) in the Bankruptcy Case will be disallowed. In the event that the Plan does not become effective, or the Bankruptcy Case is converted to one under Chapter 7 of the Bankruptcy Code, Mr. Sharma shall retain whatever rights or claims he has as a result of his ownership in the Debtor's common stock and the Sharmas' Series A Preferred Stock.

2. **Releases.** In exchange for the consideration set forth above and the releases set out herein:

a. **Sharma Releases.** On the Bankruptcy Approval Motion Final Order Date (as defined below), the Sharmas, on behalf of themselves, their heirs, executors, administrators, attorneys, agents, successors, affiliates, parents, representatives and assigns (***the "Sharma Releasors"***) agree to release and forever discharge the Debtor and its current and former directors, officers, employees, successors, assigns, representatives, agents, attorneys, consultants, partners, investment bankers, placement agents, shareholders, both individually and in their official capacities (the "***Company Parties***"), from any and all debts, demands, actions, causes of

action, contracts, claims, suits, damages and liabilities of any kind whatsoever, in law or in equity, whether known or unknown, anticipated or unanticipated, and whether accrued or hereafter to accrue that the Sharma Releasors now have, may have, or could have from the beginning of time to the Bankruptcy Approval Motion Final Order Date arising out of any matter or thing which occurred on or prior to the Bankruptcy Approval Motion Final Order Date, whether known or unknown, including, but not limited to, any and all claims regarding any investment in the Company, loans made to the Company, capital infusions, any tort (including without limitation fraud, fraudulent inducement, trade secret misappropriation, theft of corporate opportunity, breach of fiduciary duty, securities fraud, intentional misrepresentation, negligent misrepresentation, defamation, etc.), claims for indemnification and/or advancement of legal expenses, and any and all claims that are pending, were pending, or could have been asserted in the California Action, the Minnesota Action, and/or the Bankruptcy Case (all collectively, the "***Sharmas' Released Claims***").

       b.    **Mr. Sharma Releases.**  In addition, on the Bankruptcy Approval Motion Final Order Date, Mr. Sharma, on behalf of himself, his heirs, executors, administrators, attorneys, agents, successors, affiliates, parents, insurers, representatives and assigns, agrees to release and forever discharge the Company Parties from any and all debts, demands, actions, causes of action, contracts, claims, suits, damages and liabilities of any kind whatsoever, in law or in equity, whether known or unknown, anticipated or unanticipated, regarding any matter arising on or before the Bankruptcy Approval Motion Final Order Date, including, but not limited to, all claims regarding Mr. Sharma's employment at, or termination of employment from the Company, including any claim to any wages, commissions, bonuses, or any claim for equitable relief or recovery of punitive, compensatory, or other damages or monies (including claims as to taxes), attorneys' fees, any tort (including without limitation fraud, fraudulent inducement, intentional misrepresentation or negligent misrepresentation), any claim of breach of the covenant of good faith and fair dealing, and all claims for alleged discrimination based upon age, race, color, sex, sexual orientation, marital status, religion, national origin, handicap, disability, genetic information or retaliation, including in all such cases any claim of any kind, asserted or unasserted, which could arise under Title VII of the Civil Rights Act of 1964; the Equal Pay Act of 1963; the Americans With Disabilities Act of 1990; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act of 2008; the Family and Medical Leave Act of 1993; the Employee Retirement Income Security Act of 1974; the Civil Rights Act of 1991; the Worker Adjustment and Retraining Notification ("WARN") Act of 1988; the Minnesota State WARN Act; the Age Discrimination in Employment Act of 1967 as amended (the "ADEA"); the Older Workers Benefit Protection Act of 1990 as amended; Minnesota's Constitution; the Minnesota Human Rights Act; and any other federal, state or local laws, rules or regulations, whether equal employment opportunity laws, rules or regulations or otherwise (collectively, "***Mr. Sharma's Released Claims***").

       c.    **Company Releases.**  On the Bankruptcy Approval Motion Final Order Date, the Company, on behalf of itself, its successors, and assigns (the "***Company Releasors***"), agree to release and forever discharge the Sharma Releasors from any and all debts, demands, actions, causes of action, contracts, claims, suits, damages and liabilities of any kind whatsoever, in law or in equity, whether known or unknown, anticipated or unanticipated, and whether accrued or hereafter to accrue that the Company Releasors now have, may have, or could have from the beginning of time to the Bankruptcy Approval Motion Final Order Date arising out of

107366144.5 0072141-00003

any matter or thing which occurred on or prior to the Bankruptcy Approval Motion Final Order Date, whether known or unknown, including, but not limited to, any and all claims regarding any investment in the Company, loans made to the Company, capital infusions, any tort (including without limitation fraud, fraudulent inducement, trade secret misappropriation, theft of corporate opportunity, breach of fiduciary duty, securities fraud, intentional misrepresentation, negligent misrepresentation, defamation, etc.), and any and all claims that are pending, were pending, or could have been asserted in the litigation pending in the California Action, the Minnesota Action, and/or the Bankruptcy Case (all collectively, the "*Company Released Claims*").

        d.    **Waiver of Section 1542**. The Parties agree that they will freely, voluntarily willingly and intentionally elect to and waive the rights described in Section 1542 of the Civil Code of California (and all similar statutes), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

       **3.**   **Bankruptcy Cooperation and Plan Confirmation.**

        a.    The Sharmas agree that, upon the filing of a motion to approve a settlement based on this Settlement Agreement in the Bankruptcy Case, (the "*Execution Date*"), they will withdraw all pending objections in the Bankruptcy Case, and not file any additional objections to the Debtor's applications to retain and employ both Stoel Rives LLP as Counsel and Ogloza Fortney + Friedman LLP as Special Counsel, or any other counsel that the Debtor seeks to employ during the Bankruptcy Case. The Sharmas further agree that they will not object to any fee application made by any Counsel or Special Counsel to the Debtor.

        b.    The Sharmas agree that upon Execution Date, they will agree to support and vote any claims or interests they may have in favor of the Plan, and not object or otherwise oppose the Plan, nor will the Sharmas oppose or otherwise object to any other motion and or application filed by the Debtor, unless such motion or application seeks to renege, challenge, change, or otherwise modify the terms set forth in this Settlement Agreement without their express written consent. The Sharmas shall not be required to submit any declarations or testimony in the Bankruptcy Case except for the purposes of supporting (i) confirmation of the Plan and (ii) the Bankruptcy Approval Motion (as defined below). The Sharmas shall be permitted to respond to any motion filed in the Bankruptcy Case that challenges the approval of this Settlement Agreement. The Sharmas further agree not to appeal any order confirming the Plan.

        c.    Notwithstanding the foregoing, if a Bankruptcy Approval Motion (as defined below) is not granted, the Sharmas shall be permitted to prosecute any claims asserted in the Bankruptcy Case pursuant to a timely-filed proof of claim.

        d.    The Parties agree that on or before July 20, 2020, the Company will file a motion in the Bankruptcy Case to obtain approval of the Settlement Agreement and any related

compromise pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "***Bankruptcy Approval Motion***").

        e.      The Parties agree that upon the Execution Date, the Parties shall take all motions, depositions, discovery in the California Action off-calendar, and if necessary, shall inform the court in the California Action of the settlement and the hearing date for any Bankruptcy Approval Motion.

        f.      The Company agrees to seek consensual third-party releases for its current and former officers and directors in connection with solicitation and confirmation of the Plan. The Company shall include Mr. Sharma in any release provision set forth in its Plan that applies to the Debtor's officers or board members, including but not limited to Sections 5.3 and 5.5 of the draft Plan circulated to the Sharmas' counsel on or about June 30, 2020. The Sharmas agree to consent to all such releases, including third-party releases, in the Plan.

        g.      Except as otherwise expressly permitted by the Settlement Agreement, the Sharmas shall not take or cause any other person to take any action or engage in any conduct that would in any way adversely affect the Company's consummation or implementation of the Plan, including the Exit Capital Raise, conditions precedent to the Effective Date, and any corporate actions necessary or appropriate in furtherance thereof, as provided and authorized under the Plan.

### 4. Non-Disparagement.

        a.      On the Execution Date, the Sharmas agree that they will not, except if truthfully responding to any lawful court order, subpoena, government inquiry, or otherwise responding to or providing disclosures required by law, publish or make any statement: (i) that is critical or Disparaging (as defined below) of the Company Parties, or (ii) which would in any way adversely affect or otherwise malign the business or reputation of any Company Parties, including without limitation for the purpose of interfering with damaging any of Company's business relationships (including its relationships with current or prospective investors, customers, business partners, clients, affiliates, employees, independent contractors and partners).

        b.      On the Execution Date, the Company agrees that it shall direct its directors and employees to not publish or make any statement: (i) that is critical or Disparaging (as defined below) of Mr. Sharma and/or Dr. Sharma or (ii) which would in any way adversely affect or otherwise malign their businesses, controlled companies or enterprises, or reputation, except if truthfully responding to any lawful court order, subpoena, government inquiry, or otherwise responding to or providing disclosures required by law (including, but not limited to, any and all securities laws). In the interest of clarity, this provision shall not, in any way, limit the Company's ability to provide truthful disclosures to all investors, potential investors, lenders, etc., deemed reasonably necessary in connection with a legitimate purpose.

        c.      "*Disparaging*" statements are those that impugn the character, honesty, integrity morality, or business acumen or abilities in connection with any aspect of the operation

of business of the individual or entity being disparaged. Disparaging statements does not include any statements citing to, or quoting statements made by a court of law.

**5.  No Contact and No Harassment.**

a.      The Parties agree that upon the Execution Date, the Parties shall have no contact with each other, and the Sharmas shall have no contact with the Company and/or its current directors, officers, and employees, or any of their families. Any contacts between the Parties shall be made through counsel. The Sharmas agree to not, directly or indirectly, contact, harass, intimidate, and/or threaten the Company, and/or its directors and officers or their families. The Company agrees to not directly, or indirectly, contact harass, intimidate, and/or threaten  Mr. or Dr. Sharma, or their family, or the directors, officers of Kloudgaze, Inc.("***Kloudgaze***") and/or Neoforma LLC, a Minnesota company ("***Neoforma***"),  and agrees to direct its current board and officers to similarly refrain from such conduct. In addition to the foregoing, The Parties agree to not, directly or indirectly, knowingly contact any employees of the Company or the employees of Kloudgaze and Neoforma.

b.      **Safe Harbor.**  The Parties acknowledge and agree that the employees of Crosscode, Kloudgaze and Neoforma may change over time and that an inadvertent contact may occur. Accordingly, each party shall be granted one "safe harbor," contact and one such inadvertent contact shall be excused, so long as the other party notifies the offending party in writing, within five (5) days from the discovery of such contact. This provision shall not apply to any contacts made to any directors, officers or their family from either Party.

c.      Notwithstanding the foregoing, nothing herein shall preclude the Parties from asserting any rights to enforce the Settlement Agreement or other legally protected rights. The Parties further agree that should either Sharma cease being represented by counsel, the Companies' CEO or CFO shall be permitted to contact Mr. or Dr. Sharma for any business purpose.

**6.      Covenant Not to Sue.**

a.      Except only as to claims for breach or enforcement of the Settlement Agreement, the Sharma Releasors covenant not to sue the Company Parties on any and all of the Sharmas Released Claims and/or Mr. Sharma's Released Claims, whether directly, derivatively, in a representative capacity, or otherwise.

b.      Except only as to claims for breach or enforcement of the Settlement Agreement, the Company Releasors covenant not to sue the Sharma Releasors on any and all of the Company Released Claims, whether directly, derivatively, in a representative capacity, or otherwise.

c.      In the event that any Party violate this covenant-not-to-sue, the violating Party shall be responsible for all of the attorneys' fees and costs incurred by the other parties to the action, suit, or proceeding, barred by this Section.

### 7. Breach of the Agreement and Liquidated Damages.

a. Should the Sharmas breach any provision of the Settlement Agreement, the Sharmas shall be jointly and severally liable for all attorneys' fees and costs incurred by the Company Parties. In addition, should Mr. Sharma and/or Dr. Sharma breach the non-disparagement or the no-harassment provisions of this settlement set forth in Sections 4 and 5, the Sharmas, jointly and severally, shall pay the sum of $100,000 for each such breach, as liquidated damages, to the offended Company Party. The Sharmas agree that under the circumstances existing as of the time the Settlement Agreement is entered into, these liquidated damages amounts are reasonable in light of the professional and personal interests of the Parties and are not intended as a penalty.

b. Should the Company breach any provision of the Settlement Agreement, the Company shall be liable for all attorneys' fees and costs incurred by the Sharmas. In addition, should the Company, through any statement made by a current director, CEO, CFO, or CTO or other officer, breach the non-disparagement or the no-harassment provisions of this settlement set forth in Sections 4 and 5, the Company shall pay the sum of $100,000 for each such breach, as liquidated damages, to each offended Sharma. The Company agrees that under the circumstances existing as of the time the Settlement Agreement is entered into, these liquidated damages amounts are reasonable in light of the professional and personal interests of the Parties and are not intended as a penalty.

### 8. Intellectual Property of the Company.

a. For purposes of this Settlement Agreement, the "***Company's IP***" shall be defined as, collectively, all of Crosscode's rights and interests (i) in any patents, trademarks, trade secrets disclosed in *Crosscode Trade Secret Disclosure* (as defined below), patentable inventions, copyrightable works of authorship or software, conceived and existing as of or before November 13, 2019, including (A) any of the foregoing items incorporated into the software or product known as "Crosscode Panoptics" and its derivations and (B) source code and its related data model as identified in Crosscode's Trade Secret Disclosure Exhibits A, B, and C of the Parties' Stipulation for Modification of Preliminary Injunction and Order filed in the California Action on April 22, 2020 (the "***Crosscode Trade Secret Disclosure***"), and (ii) that may continue or derive therefrom, *provided that* any such continuation or derivation falls within the scope of, and is separately protectible under, Section 8(a)(i).

b. In addition to the releases set forth in Section 2 of this Settlement Agreement, Mr. Sharma agrees to release and surrender all of his claims, rights, or interests, if any, in or to the Company's IP, including (i) the licensed intellectual property under the Purported License Agreement and (ii) that are the subject of the California Action.

c. Notwithstanding any terms to the contrary in the Plan, any executory agreement between Mr. Sharma and the Debtor, including the Purported License Agreement, shall be deemed rejected, pursuant to 11 U.S.C. § 365, as of the Debtor's Petition Date (May 5, 2020).

107366144.5 0072141-00003

9.    **Settlement Timing.**

a.    The Company agrees that, as part of its Bankruptcy Approval Motion, it will seek the Bankruptcy Court's approval to pay $50,000 of the Cash Consideration to Dr. Sharma fifteen days after an order granting the Bankruptcy Approval Motion is entered ("***Bankruptcy Approval Motion Final Order Date***").  The remaining $200,000 of the Cash Consideration shall be treated and paid as an Allowed Class Three General Unsecured Claim under the Plan.  Should the Bankruptcy Court decline to approve the payment of $50,000 upon Bankruptcy Approval Motion Final Order Date, the entire Cash Consideration shall be treated and paid as an Allowed Class Three General Unsecured Claim under the Plan.

b.    The Parties shall apply for dismissal of both the California Action and the Minnesota Action within fifteen days following the Bankruptcy Approval Motion Final Order Date.

c.    Should the Settlement Agreement not be approved by the Bankruptcy Court, the Parties shall be restored to their respective positions prior to the Execution Date.  Any terms set forth in the Term Sheet and this Settlement Agreement shall be deemed null and void, and as if they never existed.

10.    **Miscellaneous.**

a.    This Settlement Agreement, including its negotiation and executions, shall be governed by and construed in accordance with the laws of the State of California without regard to conflict of law principles.  The Parties agree that any disputes with respect to this Settlement Agreement or the enforcement thereof, including with regard to its negotiation and execution, shall be brought in the Bankruptcy Court.  The Parties expressly submit and consent to the exclusive jurisdiction of (i) with respect to the Settlement Agreement, the Bankruptcy Court and (ii) with respect to the Settlement Agreement, the United States District Court for the Northern District of California (or the Bankruptcy Court, if brought therein or referred thereto) and agree not to contest jurisdiction.

b.    The Parties hereby represent and warrant that they have the power and authority to execute, deliver and perform this Settlement Agreement.

c.    This Settlement Agreement constitutes the entire agreement between the Parties and supersedes and cancels all prior and contemporaneous written and oral agreements between the Parties, including the Term Sheet, except that Sections 5.1, Section 6, and Exhibit A of Mr. Sharma's March 26, 2019 Employment Agreement shall remain in full force and effect.

d.    Return/Destruction of Company Property.  Within 10 days after the Effective Date, Mr. Sharma shall certify that he has destroyed or returned all Company property, including, all intangible property, without limitation, customer lists, manuals, contract forms, documents, electronically stored information (including all emails sent to/from Mr. Sharma's Crosscode.com email address and all other emails concerning Crosscode sent or received while Mr. Sharma was an employee of Crosscode) or any other tangible or intangible documents or information used by the Company.

-8-

e.     Within 10 days after the Effective Date, Crosscode shall take steps to ensure that the email account asharma@Crosscode.com shall be terminated and no longer be able to receive or send emails.  Also within 10 days after the Effective Date, Mr. Sharma shall no longer represent on social media or otherwise that he currently has any position as a director, officer or employee of Crosscode.  Mr. Sharma may still represent that he founded Crosscode, and that until November 13, 2019, he served as the Company's President, CEO, and chairman of the board of directors.

f.     The Parties agree to cooperate and work in good faith in the drafting and execution of any additional documents or agreements necessary to implement any of the above provisions, including but not limited to the Bankruptcy Approval Motion.

g.     The Parties executing this Settlement Agreement do so without admitting any fault or liability whatsoever.  No term or condition of this Settlement Agreement is intended to be or shall be deemed and construed as an expression of fault or liability.

h.     This Settlement Agreement is the product of negotiation by and among the Parties.  Each of the Parties acknowledge that it has had the opportunity to be represented by their own independent counsel in connection with this Settlement Agreement.

i.     Each of the Parties and their respective counsel has been provided with an opportunity to participate in the drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this thereof, the same shall not be construed against any Party.  Each of the Parties to this Settlement Agreement has executed this Settlement Agreement voluntarily and without duress or undue influence on the part of or on behalf of any Party hereto.

j.     This Settlement Agreement may be executed in any number of counterparts, a complete set of which shall constitute a duly executed original, and digital signatures shall be treated as originals for all purposes irrespective of any jurisdiction's best evidence rule.

k.     Section and Paragraph headings shall not be construed in interpreting this Settlement Agreement, or the intent of the Parties hereto.

107366144.5 0072141-00003

**THE UNDERSIGNED HAVE READ THE FOREGOING SETTLEMENT AGREEMENT FULLY UNDERSTAND IT, AND AGREE TO THE TERMS SET FORTH HEREIN.**

| **Parties** | **Approved as to Form** |
|---|---|

**Crosscode, Inc.**                     **Stoel Rives LLP**

By: _____          By: _/s/ Andrew H. Morton_

Name: _____          Name: Andrew H. Morton

Title: _____          Title: Counsel for Crosscode, Inc.

Date: _____          Date: July 20, 2020


**Ogloza Fortney + Friedman LLP**

By: _/s/ David M. Friedman_

Name: David M. Friedman

Title: Counsel for Crosscode, Inc.

Date: July 20, 2020


**Aditya Sharma**                       **JAZ, A Professional Legal Corporation**

                                        By: _/s/ Peter F. Jazayeri_

_____               Name: Peter F. Jazayeri

Date: _____           Title: Counsel for Aditya and Anshu Sharma

                                        Date: July 20, 2020


**Dr. Anshu Sharma, M.D.**              **Lee Anav Chung White Kim**

                                        **Ruger & Richter LLP**

_____               By: _/s/ Jay Chung_

Date: _____           Name: Jay Chung

                                        Title: Counsel for Aditya Sharma

                                        Date: July 20, 2020

Case: 20-30383    Doc# 101    Filed: 07/20/20    Entered: 07/20/20 19:46:28    Page 24 of
28

# Exhibit B

BAO M. VU (SB #277970)
bao.vu@stoel.com
THOMAS A. WOODS (SB #210050)
thomas.woods@stoel.com
ANDREW H. MORTON (*admitted pro hac vice*)
andrew.morton@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

*Proposed Counsel for Debtor and
Debtor in Possession*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>CROSSCODE, INC.,<br><br>　　　　　　　Debtor. | Case No. 20-30383<br><br>Chapter 11<br><br>[PROPOSED] ORDER GRANTING MOTION TO APPROVE COMPROMISE PURSUANT TO FED. R. BANKR. P. 9019 |

Upon the Motion, dated July 20, 2020 Docket No. [___] (the "***Motion***"),[1] of Crosscode, Inc., as debtor and debtor-in-possession (the "***Debtor***") in the above-captioned chapter 11 case (the "***Chapter 11 Case***"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for entry of an order (i) approving the settlement agreement, entered into as of July 20, 2020 (the "***Settlement Agreement***"), by and among the Debtor, Mr. Aditya Sharma ("***Mr. Sharma***"), and Dr. Anshu Sharma ("***Dr. Sharma***" and together with Mr. Sharma, the "***Sharmas***") and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other further notice need be provided; and this Court having reviewed the Motion and the Morton Declaration; and this Court having determined that the legal and factual bases set forth in the Motion and the Morton Declaration establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion represents a sound exercise of the Debtor's business judgment and is in the best interests of the Debtor, its estate, creditors, equity interest holders, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      The Settlement Agreement represents a valid and sound exercise of the Debtor's business judgment and, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement is hereby approved in its entirety.

3.      The Debtor is authorized to enter into and perform under the Settlement Agreement and to execute and deliver all instruments and documents and take any additional actions necessary or appropriate to implement and effectuate the entry into and performance under the Settlement Agreement, including any transactions contemplated thereby.

4.      The Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties thereto, the Company Parties, and the Sharma Releasors (as defined in the Settlement Agreement) to the extent provided by law.

5.      The failure to describe specifically or include any particular provision of, or documents related to, the Settlement Agreement in the Motion or this Order shall not diminish or impair the effectiveness of either the Settlement Agreement or such document, it being the intent of the Court that the Settlement Agreement be approved in its entirety.

Stoel Rives LLP
Attorneys At Law
Sacramento

6.     The Debtor is authorized to take all necessary actions to effectuate the relief granted pursuant to this Order in accordance with the Motion.

7.     The Clerk of the Court shall update the Official Claims Register to reflect the terms of the Settlement Agreement.

8.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

** END OF ORDER **

Presented by:

STOEL RIVES LLP


By: /s/ Andrew H. Morton
    Bao M. Vu
    Thomas A. Woods
    Andrew H. Morton (*admitted pro hac vice*)

*Proposed Counsel for Debtor and
Debtor in Possession*

Approved for entry:

JAZ, A PROFESSIONAL LEGAL
CORPORATION


By: /s/ Peter Jazayeri
    Peter Jazayeri

*Counsel for Aditya Sharma and
Anshu Sharma*

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO